**E-FILED**
Friday, 16 December, 2005  09:53:32 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JOHN E. COVINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-1204 |
| | ) | |
| JIM SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Before the Court is Plaintiff John E. Covington's Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. #19]; and his Further Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. #21]. For the reasons that follow, Plaintiff's Motions are denied.

### I.
### BACKGROUND

On July 28, 2005, Plaintiff filed a complaint against the United States Department of Justice ("DOJ") and Officer Jim Smith raising constitutional claims under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). With permission of the Court, Plaintiff amended his complaint dropping the DOJ as a defendant but reasserting his claims against Officer Smith. On November 10, 2005, Plaintiff filed the instant Motion seeking a temporary restraining order ("TRO") and/or a preliminary injunction against Officer Smith.

In support of his Motion, Plaintiff alleges that Defendant engaged in the following acts while searching for his 23 year-old fugitive son: (1) arrested Plaintiff for outstanding warrants after illegally entering his home on May 5, 2003; (2) harassed Plaintiff after attempting to enter his home on November 1, 2004; (3) arrested Plaintiff for traffic violations and obstructing the police after illegally entering his home without a warrant on October 8, 2004; (4) harassed Plaintiff on or about July 8, 2005; and (5) harassed Plaintiff on October 1, 2005, by lurking in his neighborhood in an unmarked police car. Based on these events, Plaintiff seeks to enjoin Defendant and all others acting in concert with him from: (1) further deprivations of his civil rights; (2) entering his home (with the exception of an emergency response); (3) further threats of harassment; and (4) whatever else the Court deems just and proper.

## II.
## LEGAL STANDARD

As a threshold matter, a court may not grant a TRO absent the submission of an affidavit or verified complaint pointing to specific facts which clearly indicate that the applicant will suffer immediate and irreparable harm prior to the adverse party receiving notice and an opportunity to be heard. See Fed. R. Civ. P. 65(b). Plaintiff in the instant matter has neither

filed an affidavit nor a verified complaint with the Court. Furthermore, the adverse party has already received notice of Plaintiff's Motion, and has responded. <u>See</u> Def. Resp. [Doc #20]. Therefore, the instant Motion will be viewed simply as a motion for preliminary injunction.[1] <u>See</u> <u>Levas v. Vill. of Antiotch</u>, 684 F.2d 446, 448 (7th Cir. 1982) (holding that a court should treat a TRO as one for preliminary injunction when the adverse party has notice and an opportunity to be heard).

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." <u>Kos Pharms., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 708 (7th Cir. 2004) (internal quotations omitted). To help the district courts determine which circumstances warrant such relief, the Seventh Circuit articulated a five-part test:

> A party seeking a preliminary injunction must demonstrate that (1) the moving party has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the defendant will suffer if the

---

[1] Pursuant to Local Rule 7.1(A): "***Any motion*** may be . . . determined upon the pleadings and the motion papers without benefit of oral argument. Any party desiring oral argument on a motion ***shall so specify*** in the motion or opposition thereto and state the reason why oral argument is desired." CDIL-LR 7.1(A) (emphasis added). The Court notes that neither party has requested a hearing on the Motion and, Defendant on the other hand, has requested that the Court rule on the Motion summarily without a hearing. Therefore, pursuant to Local Rule 7.1(a), the Court will proceed to rule on the matter without such a hearing.

injunction is granted; and (5) the injunction will not harm the public interest. In order to prevail, the plaintiff must satisfy each element of this five-part test.

Rust Env't & Infrastructure v. Teunissen, 131 F.3d 1210, 1213 (7th Cir. 1997) (citations omitted).

A preliminary injunction will not issue, unless a plaintiff can first demonstrate that he has a reasonable likelihood of succeeding on the merits of his case. This threshold, however, is low. See Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 387 (7th Cir. 1984). In fact, a plaintiff need only show "that [he] has a better than negligible chance of succeeding on the merits." Meridian Mut. Ins. Co. v. Meridian Ins. Group, 128 F.3d 1111, 1114 (7th Cir. 1997); see also Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1043 (7th Cir. 2000).

In addition to demonstrating a likelihood of success on the merits, a plaintiff must also show that he has no adequate remedy at law and will suffer irreparable harm absent injunctive relief. Roland Mach., 749 F.2d at 386. But "[w]here the only remedy sought at trial is damages, the two requirements -- irreparable harm, and no adequate remedy at law -- merge. The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." Id. "Only if he will suffer irreparable harm in the interim -- that is, harm that cannot be prevented or fully rectified by the final

4

judgment after trial -- can he get a preliminary injunction."
Id.   In essence, "the plaintiff must show that an award of
damages at the end of trial will be inadequate," that is, an
award of damages is "seriously deficient as a remedy for the
harm suffered."   Id.   Moreover, if the plaintiff "can easily
wait till the end of trial to get [his] relief[,]" he has
suffered no irreparable harm.   Id.

Once the plaintiff clears these three hurdles, the court
must then weigh the amount of irreparable harm that the
defendant can show he will suffer if the injunction is granted
versus the amount of irreparable harm that the plaintiff will
suffer if the preliminary injunction is denied.   Roland Mach.,
749 F.2d at 387.   Finally, if granting or denying a preliminary
injunction will have consequences beyond the immediate parties,
the Court must then consider the possible effect its decision
will have on the "public interest" at stake.   Id. at 388.

## III.
## ANALYSIS

The Court first cautions that the legal analysis to follow
is tentative because the purpose of a preliminary injunction is
to preserve the status quo until the merits of the case have
been determined; it is not to serve as the last word on factual
and legal disputes between the parties.   See Teunissen, 131 F.3d
at 1213; Indianapolis Colts v. Metro. Baltimore Football Club

Ltd. P'ship, 34 F.3d 410, 412 (7th Cir. 1994); Office Mates 5, North Shore, Inc. v. Hazen, 234 Ill. App. 3d 557, 567-68 (1st Dist. 1992).  With this in mind, the Court will now turn to the merits of Plaintiff's constitutional claims under § 1983 and Bivens before addressing the remainder of the preliminary injunction factors.  See Meridian Mut., 128 F.3d at 1121 (emphasizing that district courts should examine, if only briefly, each of the preliminary injunction factors).

**A.   Reasonable Likelihood of Success on the Merits**

In his Motion, Plaintiff contends that as far back as May 2003 and as recent as October 2005, Defendant has engaged in acts which violate his civil rights.  However, the civil rights violations alleged in Plaintiff's amended complaint relate only to the events that took place on October 8, 2004, at his home on 716 E. Wilcox.  As a result, this Court need only address the merits of Plaintiff's claims as alleged in his amended complaint.

**1.   Unreasonable Search & Seizure Claims**

Based on his amended complaint and the instant Motion, Plaintiff has a reasonable likelihood of success on the merits of his unreasonable search and seizure claims; that is, his chances of succeeding are better than negligible.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures . . . ." U.S. Const. amend. IV. There is no question that Defendant conducted a search of Plaintiff's home on October 8, 2004, and that Plaintiff was subsequently arrested -- amounting to a seizure of his person. The only question is whether the search of plaintiff's home and his subsequent seizure were "unreasonable" under the Fourth Amendment.

It is well-established that searches and seizures inside a home without a warrant are presumptively unreasonable under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 585-86 (1980); Leaf v. Shelnutt, 400 F.3d 1070, 1081 (7th Cir. 2005). As the Supreme Court stated, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances [or consent], that threshold may not reasonably be crossed without a warrant." Payton, 445 U.S. at 590.

Defendant concedes that he had no search warrant to enter and search Plaintiff's home, nor an arrest warrant to arrest Plaintiff. Further, none of the exceptions to the warrant requirement apply to the facts of this case. Plaintiff did not consent to Defendant's entry and subsequent search of his home, nor did anyone else living with Plaintiff. See Moore v. Marketplace Rest., Inc., 754 F.2d 1336, 1357 (7th Cir. 1985) (Posner, J., concurring) ("When police knock at the door of a house . . . and the householder opens the door, he does not

thereby consent to an entry into his house.  He opens the door so that the police will not break it in.").

Also, the facts of this case do not warrant a finding of exigent circumstances.  Exigent circumstances exist only when there is "a compelling need for official action **and** no time to secure a warrant." <u>Michigan v. Tyler</u>, 436 U.S. 499, 509 (1978) (emphasis added).  As the Supreme Court explained, these situations are "few in number and carefully delineated, and [thus] police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 749-50 (1984) (internal quotations omitted); <u>see also</u> <u>Minnesota v. Olson</u>, 495 U.S. 91, 100 (1990) (explaining that exigent circumstances include hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, and risk of danger to the police or others inside or outside the home).  Defendant, however, simply alleges no facts that would support a finding that he had an "urgent need" to take official action.

Moreover, even if probable cause did exist to believe that Plaintiff's son was present and could possibly escape, which the Court does not find to be the case, Defendant had several hours to secure a search warrant during his surveillance of Plaintiff's home.  <u>See</u> <u>United States v. Patino</u>, 830 F.2d 1413, 1416 (7th Cir. 1987) (holding that thirty minutes is more than

enough time to arrange a telephonic search warrant pursuant to Federal Rule of Criminal Procedure 41(d)(3)(A), formerly 41(c)(2)). As a result, not only does Defendant fail to show a compelling need to take official action, but he also had sufficient time to get a search warrant before entering Plaintiff's home in search of his son. The Court's analysis, however, does not end here.

An officer is not required to obtain a search warrant to effectuate a suspect's arrest in his or her own home; instead, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603. But the Supreme Court later clarified that this "limited authority" did not extend to the home of a third person. See Steagald v. United States, 451 U.S. 204, 205 (1981). In Steagald, the Supreme Court held that absent exigent circumstances or consent, an officer must first obtain a search warrant before entering a third person's home to search for the subject of an arrest warrant. Id. at 205, 221 (explaining that police can readily seize the subject of an arrest warrant before he enters or after he leaves the home of a third party).

Defendant alleges that while he had no warrant to either arrest Plaintiff or search his home, he did have a valid warrant

to arrest Plaintiff's son.  However, the Fourth Amendment claim here is not being asserted by Plaintiff's son; it is being asserted by Plaintiff, a person not named in the arrest warrant. Thus, under Steagald, Defendant had no authority to enter Plaintiff's home to search for his son, despite the existence of a valid arrest warrant in his son's name.

Defendant, however, argues that the Court's analysis should be governed by Payton, rather than Steagald.  In a footnote in his Memorandum in Opposition to Plaintiff's Motion ("Response"), he states that "officers had reason to believe that [P]laintiff's son lived at 716 E. Wilcox and had reason to believe that [P]laintiff's son was present, thus [the] search was entirely lawful, due to Payton v. New York[.]"  Def. Resp. [Doc #20].   This isolated statement alone, of course, is insufficient.  Defendant provides no facts in his Response to support the reasonableness of this claim.  The only facts the Court could find that would lend any support to Defendant's statement are contained in the police report attached to Plaintiff's Motion.  However, these facts too are insufficient.

In his police report, Defendant states that mail for Plaintiff's son was delivered to Plaintiff's home at 716 E. Wilcox.  However, he does not state how much mail was delivered, when, or for how long.  The mere fact that some mail may have been delivered to Plaintiff's address in the name of his son --

not knowing how much or for how long -- would hardly seem sufficient to this Court to form a reasonable basis for believing that Plaintiff's 23 year-old son was in fact living at his father's home.  This is especially true since the only thing that distinguishes Plaintiff, John Covington, Sr., from his son, John Covington, Jr., is the suffix at the end of their names. Moreover, many people continue to receive mail at their parent's home, at least for some time, after they move out.

While the location where mail is delivered is certainly a factor to be consider when determining whether a particular place is a person's "home" for purposes of <u>Payton</u>, it is only one of many factors.[2]  The more important question would seem to be whether the suspect has dominion or control over the premises.  Nothing in Defendant's police report or his Response, suggests that Plaintiff's son had any control over the premises located at 716 E. Wilcox.  Even if Defendant had reason to believe that Plaintiff's son resided at 716 E. Wilcox, Defendant

---

[2] Other factors considered when determining a person's "home" for purposes of <u>Payton</u> are: (1) whether the suspect has been physically present at the residence for a substantial period of time prior to the officer's entry; (2) whether the suspect regular stays or sleeps at the residence; (3) whether the suspect has exclusive use or control of the residence, or any part thereof; (4) whether the suspect stores his clothes or possessions at the residence; (5) whether the suspect has his name on the door of the residence; (6) whether the suspect contributes to the upkeep of the residence; and (7) whether the suspect is related by blood or marriage to others who live at the residence. <u>See</u> <u>People v. White</u>, 512 N.E.2d 677, 683 (Illinois 1987).

cannot meet the second prong of Payton -- that he had reason to believe that Plaintiff's son was inside the residence at the time he entered to execute the arrest warrant.

To justify his belief that Plaintiff's son was not only residing at 716 E. Wilcox, but was also present at the time he entered the premises on October 8, 2004, Defendant relies on his surveillance of the residence.  In his police report, Defendant makes an ambiguous statement that one of the officers "saw **someone** look out an upstairs window while [he] was knocking on the front door."   Pl. Mtn. (emphasis added) [Doc. #19]. Defendant, however, does not point to any facts that would lead a reasonable officer under like circumstances to believe that the person looking out the upstairs window may have been Plaintiff's son.  In fact, he does not provide a description of this person, nor does he state that he or any other officer reasonably believed that the anonymous person was indeed Plaintiff's son.   Further, Defendant does not suggest that Plaintiff's son was ever positively identified by any officer during the surveillance of Plaintiff's home, nor does he allege that a reliable source could place Plaintiff's son anywhere close to 716 E. Wilcox on October 8, 2004.

If Defendant indeed had reason to believe that the individual in the upstairs window was Plaintiff's son, and reason to believe that Plaintiff's son in fact lived with his

father at 716 E. Wilcox, then the arrest warrant naming Plaintiff's son as a suspect would have been sufficient to justify his entry into the home at that time. See Payton, 445 U.S. at 603. But, Defendant did not enter the home upon noticing "someone" looking out of the upstairs window; instead, he waited several hours until he noticed Plaintiff drive past him without a license. It was not until this time that he decided to enter Plaintiff's home without a warrant and without Plaintiff's consent.

While this Court does not sit to second guess police methods for catching fugitives, it does sit to ensure that police have a reasonable basis for crossing the threshold of a person's "castle" absent a search warrant. Here, it does not appear that Defendant had a reasonable basis to conduct a warrantless search of Plaintiff's home. If he did, it is unclear to this Court why he did not use the additional time he had to secure a search warrant as many courts have often instructed. See Patino, 830 F.2d at 1416.

It is only when an officer has a lawful purpose for entering a person's home does the Constitution not require him to obtain a warrant before effectuating an otherwise lawful arrest within. See Sheik-Abdi v. McClellan, 37 F.3d 1240, 1245 (7th Cir. 1994) (stating that "[o]nce the veil of the home has been legally pierced, we see no need for police officers to turn

a blind eye to crime, so long as the arrest is otherwise effected in compliance with the constitutional requirement of probable cause"). Because Defendant had no lawful purpose for entering Plaintiff's home in the first place, Plaintiff's subsequent arrest within was also unlawful.

Finally, Defendant raises qualified immunity as an affirmative defense to any finding by the Court that his actions on October 8, 2004, were unconstitutional. A public official is entitled to qualified immunity only if the Court determines that the particular constitutional violation in question was not "clearly established" at the time of his actions. Green v. Butler, 420 F.3d 689, 700-01 (7th Cir. 2005). The Court, however, finds that no reasonable officer under like circumstances could claim to be unaware that a warrantless entry into a person's home is presumptively unconstitutional, absent exigent circumstances, consent, or reason to believe that the suspect named in the arrest warrant lived at the address searched and was in fact home at the time of the search. See Groh v. Ramirez, 540 U.S. 551, 564-65 (2004); Hyatt v. Indianapolis Police Dep't, No. 03-cv-0424, 2004 U.S. Dist. LEXIS 15672, at *25-27 (N.D. Ill. July 20, 2004). As a result, Defendant is not entitled to qualified immunity and Plaintiff has a better than negligible chance of succeeding on the merits of his unreasonable search and seizure claims.

## 2.   False Arrest Claim

While a false arrest claim is considered to be a species of an unreasonable seizure under the Fourth Amendment, see Gauger v. Hendle, 349 F.3d 354, 360 (7th Cir. 2003), it is important to distinguish between Plaintiff's false arrest claim and his unreasonable seizure claim above.  In his unreasonable seizure claim, Plaintiff does not focus on whether Defendant had probable cause to arrest him; instead, he attacks the manner in which Defendant carried out his arrest, without a warrant.  On the other hand, Plaintiff alleges in his false arrest claim that Defendant simply lacked probable cause to arrest him in the first place.

Probable cause to arrest exists when the facts and circumstances, within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable belief that a crime has been, is being, or is about to be committed.  See Xing Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999).  Courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* -- seeing what he saw, hearing what he heard."  Mahoney v. Kesery, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original).  "This flexible, commonsense approach does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable."  Xing

<u>Qian</u>, 168 F.3d at 953.  Therefore, the existence of probable cause serves as a complete defense to a false arrest claim under the Fourth Amendment.  <u>Penn v. Chicago State Univ.</u>, 162 F.Supp. 2d 968, 975 (N.D. Ill. 2001).

To support his false arrest claim, Plaintiff suggests that his arrest was merely a pretext, and that he was really arrested for his refusal to cooperate with Defendant's warrantless search of his home.  Even if Defendant did have bad motives for arresting Plaintiff, this fact plays no role in the Court's probable cause analysis.  Probable cause is an objective test -- it is what the police know, have seen, or have heard -- making an officer's subjective state of mind irrelevant.  <u>See Sheik-Abdi</u>, 37 F.3d at 1246-47.

According to both Plaintiff and Defendant, the two of them have had several "run-ins" over the years.  As a result, Defendant was aware that Plaintiff's driver's license had been expired since 1999.  Despite this knowledge, Defendant checked the status of Plaintiff's driver's license during his surveillance of Plaintiff's home on October 8, 2004.  The check confirmed what Defendant basically already knew, that Plaintiff's driver's license was still expired.  Later that same day, Defendant witnessed Plaintiff drive past his surveillance location in the 700 block of East Wilcox.  Defendant was able to clearly identify Plaintiff as the driver and followed him to his home at 716 E. Wilcox.  Therefore, looking at the facts as they would have appeared to Defendant at the time of the arrest, it

is apparent that a prudent officer would have believed that probable cause existed to arrest Plaintiff for driving without a license.[3]  As a result, Plaintiff has no likelihood of succeeding on the merits of his false arrest claim.

### 3.  Excessive Force Claim

In his amended complaint, Plaintiff alleges that after entering his home without a warrant or his consent, Defendant forcibly handcuffed him and threw him into a chair, lifting him off the ground and re-injuring his back.  In his Motion, Plaintiff argues that the injury he suffered during the unlawful search and seizure further warrants the issuance of a preliminary injunction against Defendant.

Defendant, however, fails to address the merits of Plaintiff's excessive force claim in his Response.  In fact, the only possible opposition the Court could find to Plaintiff's excessive force claim is, again, located in Defendant's police report attached to Plaintiff's Motion.  But the facts as alleged in the police report do little to discredit the validity of Plaintiff's claim.  Instead, the police report indicates that when Plaintiff opened his front door, Defendant requested that Plaintiff allow him to search the house for his son.  Plaintiff

---

[3] To avoid § 1983 liability, an officer only needs probable cause to arrest a suspect for one offense, not for every offense in which he is later charged.  See Atkins v. Township of Flint, 94 Fed. Appx. 342, 348 (6th Cir. 2004).  Therefore, it is unnecessary for the Court to discuss whether Defendant had probable cause to arrest Plaintiff on any additional charges.

then became verbally resistant and refused Defendant's request.[4]
According to the police report, Defendant entered Plaintiff's
home despite his resistance, placed Plaintiff in handcuffs, and
sat him in a living room chair while the other officers searched
the house.  It does not appear that Defendant or any other
officer told Plaintiff that he was under arrest or suggested
that his arrest would be imminent prior to handcuffing him and
placing or throwing him into the chair.  It is this incident
which Plaintiff alleges was excessive under the circumstances
and caused him to re-injure his back.

    Allegations that a police officer used excessive force are
analyzed under the Fourth Amendment's "reasonableness"
requirement.  Payne v. Pauley, 337 F.3d 767, 778 (7th Cir.
2003).  "A police officer's use of force is unconstitutional if,
judging from the totality of circumstances at the time of the
arrest, the officer used greater force than was reasonably
necessary to make the arrest."  Id. (internal quotations
omitted).  The Court's inquiry is based on an objective standard
of reasonableness, which is "from the perspective of a
reasonable officer on the scene, rather than with the 20/20

---

[4] There are no facts to suggest that Plaintiff's resistance was
anything more than his verbal refusal to allow Defendant to
search his home.  Defendant does not allege that Plaintiff made
physical contact with him or any other officer at anytime.

vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Forth Amendment." Id. This is because courts must be cognizant of the fact that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 397. Therefore, the Supreme Court instructed the lower courts to consider the following factors when determining whether the amount of force used was reasonable under the circumstances: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. See id. at 396.

In the instant matter, none of the above-listed factors weigh in favor of Defendant. The crimes for which Plaintiff was arrested were neither violent nor serious.[5] Further, Plaintiff was not an immediate threat to the safety of Defendant or any other officers or persons on the scene. Finally, Plaintiff did not attempt to evade arrest, nor did he actively resist arrest.

---

[5] Plaintiff was arrested for driving without a license, operating an uninsured motor vehicle, failing to secure a child while driving, and obstructing the police. All of these offenses are mere misdemeanors.

Although the police report indicates that Plaintiff was handcuffed and placed in a chair because he became resistive, the question as to when a person is deemed to be "resisting" a police officer is a question of law, not fact.

First, it is difficult to see how Plaintiff could have been actively resisting or attempting to evade arrest when he had no idea that he was in danger of being arrested. See Fantasia v. Kinsella, 956 F. Supp. 1409, 1413-14 (N.D. Ill. 1997) (holding that a person cannot actively resist or evade arrest when he is unaware that his arrest is imminent). As discussed above, when Plaintiff opened his front door, Defendant told him that he was there to search for Plaintiff's son, not to effectuate Plaintiff's arrest. Thus, Plaintiff's verbal resistance was to Defendant's warrantless entry into his home, not to Defendant's attempt to arrest him.

More importantly, it is well-settled under Illinois law that a person is not considered to be resisting arrest or obstructing the police unless his or her resistance is physical; a mere verbal assault on police officers will not suffice. Payne, 337 F.3d at 776 (collecting cases). This is because "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" City of Houston v. Hill, 482 U.S. 451, 462 (1987) (citation

omitted) (holding that the First Amendment protects even profanity-laden speech directed at police officers). Therefore, a person is not deemed to be "resisting" merely because he verbally challenges an officer's authority to enter and search his home without a warrant. This form of verbal resistance to police action can hardly justify an officer's use of force to effectuate an arrest. As the Supreme Court declared in <u>Hill</u>, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." <u>Hill</u>, 482 U.S. at 462-63.

Thus, the instant case does not involve an officer's arguable judgment in subduing an individual who was physically resisting arrest. It is under these tense, uncertain, and rapidly evolving circumstances that officers are forced to make split-second decisions as to how much force is necessary to effectuate an arrest. See <u>Tennen v. Shier</u>, No. 94-C-2127, 1995 U.S. Dist. LEXIS 9297, at *18-20 (N.D. Ill. June 30, 1995) (holding that the use of force which harms the arrestee under non-threatening circumstances is considered to be excessive because such an arrest does not require force at all). As the Court stated in <u>Tennen</u>, "[w]hen there is no resistance to arrest, it should be clear to any officer that pushing, yanking,

twisting and striking the arrestee is **never** necessary." Tennen, 1995 U.S. Dist. LEXIS 9297, at *20 (emphasis added).

Although there remains a factual dispute as to whether Plaintiff was "thrown" into the chair or merely "placed" there, it is not one that this Court needs to resolve at this time. As the Seventh Circuit pointed out, "[t]he Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.'" Herzog v. Vill. of Winnetka, 309 F.3d 1041, 1043 (7th Cir. 2002) (citation omitted). It is the unreasonable use of force itself which crosses the constitutional threshold. Id. Thus, a jury could easily find that under these circumstances no reasonable officer would have used any force at all to effectuate Plaintiff's arrest because the offenses for which he was arrested were minor, he did not pose a threat to anyone's safety, and he did not resist or attempt to evade arrest.

Finally, Defendant argues in the alternative that he is entitled to qualified immunity. However, as the Court mentioned above, it was clearly established at the time of Defendant's actions that a reasonable officer would have known that pushing, shoving, throwing, or "man-handling" an arrestee would be deemed unreasonable when the arrestee has committed only minor offenses, poses no threat to safety, and is not resisting or evading arrest. See Payne, 337 F.3d at 779-80; Tennen, 1995

U.S. Dist. LEXIS 9297, at *18-20.  As a result, Plaintiff has succeeded in demonstrating that he has a better than negligible chance of succeeding on the merits of his excessive force claim.

**B.   No Adequate Remedy at Law & Irreparable Harm**

Although Plaintiff's excessive force and unreasonable search and seizure claims may have merit, he is unable to carry his burden of demonstrating that he has no adequate remedy at law and will suffer irreparable harm if the Court does not issue a preliminary injunction in his favor.  As the Seventh Circuit aptly noted, "[a]n injunction is an equitable remedy that does not issue as a matter of course, but rather a remedy that courts may grant at their discretion in the ***extraordinary situations*** where legal remedies such as monetary damages are inadequate." Bedrossian v. Northwestern Mem'l Hosp., 409 F.3d 840, 842 (7th Cir. 2005) (emphasis added).  The instant case, however, is not one of those extraordinary situations where an award of monetary damages would be inadequate.  See Roland Mach., 749 F.2d at 386 (stating that a damage award is inadequate for one of four reasons: (1) it may come to late to save the plaintiff's company from a competitor that is driving it out of business; (2) the plaintiff may be unable to finance his lawsuit absent funds from his business that the defendant is threatening to destroy; (3) the defendant may be likely to become insolvent prior to the

plaintiff's ability to collect on the final judgment; and (4)
the plaintiff's loss profits may be too difficult to calculate).

In fact, the only remedy that Plaintiff seeks in his
amended complaint is damages "in excess of $ 200,000.00 Two
Hundred Thousand dollars . . ." Thus, the question the Court
must answer is whether Plaintiff would be made whole if he
prevailed on the merits of his claims and was awarded damages.
See Roland Mach., 749 F.2d at 386. In answering this question,
the Court is concerned only with the period between now and the
entry of a final judgment; it is only the likelihood of
irreparable harm in the interim -- that is, harm that cannot be
fully rectified by an award of damages after trial -- that would
warrant a preliminary injunction. Id. at 391.

As Plaintiff correctly points out in his Motion:

The purpose of an injunction is to prevent future
violations, and, of course, it can be utilized even
without a showing of past wrongs. But the moving
party must satisfy the court that relief is needed.
The necessary determination is that there exists some
cognizable danger of recurrent violation, something
more than the mere possibility which serves to keep
the case alive.

United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953).
Plaintiff, however, fails to satisfy the Court that injunctive
relief is needed. He does not demonstrate the likelihood that
Defendant will continue to violate his constitutional rights
prior to the entry of a final judgment on the merits. The mere

fact that Plaintiff's son is still at large does not support an inference that Defendant is likely to search Plaintiff's home again without a valid search warrant.  Furthermore, if Defendant obtains additional information that would warrant a reasonable officer to believe that Plaintiff's son not only lives at 716 E. Wilcox but at the time is present, then an arrest warrant in the son's name would justify Defendant's entry into Plaintiff's home.  Absent some other indication that Defendant is likely to violate Plaintiff's constitutional rights in the interim, a preliminary injunction is inappropriate.

Moreover, even if Defendant were to again violate Plaintiff's constitutional rights before the entry of a final judgment, Plaintiff is unable to show how a damage award at the end of trial would be inadequate to compensate him for the additional harm suffered.  Courts issue damage awards everyday for Fourth Amendment violations.  There is nothing inherently inadequate about granting such relief.  Thus, the issuance of a preliminary injunction in this case would be inappropriate because Plaintiff cannot satisfy the second and third preliminary injunction factors.  Although this fact alone is sufficient to support a denial of Plaintiff's Motion, the Court will nevertheless briefly address the remaining factors as instructed by the Seventh Circuit.  See Meridian Mut., 128 F.3d at 1121.

**C.   Balancing the Irreparable Harms to Plaintiff & Defendant**

The irreparable harm to Defendant if a preliminary injunction is issued outweighs any irreparable harm that Plaintiff may suffer if one is denied.  As discussed above, Plaintiff is unable to demonstrate that he would suffer any irreparable harm as a result of the Court's denial of his Motion.  On the other hand, if the Court were to enjoin Defendant and his fellow officers from knocking on Plaintiff's doors or entering and searching his home, this may interfere with their ability to properly follow-up on reasonable leads that would warrant such actions.  Even if Defendant were to ultimately prevail on the merits of Plaintiff's claims, such a judgment would not cure the damage caused by the interference of an on-going investigation and manhunt for Plaintiff's fugitive son.  Thus, this factor weighs against Plaintiff and his Motion for a preliminary injunction.

**D.   Public Interest at Stake**

Finally, in addition to the irreparable harm that Defendant would suffer if the Court were to issue a preliminary injunction, the public interest at stake is even greater.  The issuance of a preliminary injunction could serve to shield Plaintiff from further accountability for his criminal acts. This shield would also allow Plaintiff to harbor fugitives, such as his son.  In essence, if courts were to grant preliminary

injunctions against police officers for run-of-the-mill unreasonable search and seizure claims or excessive force claims, this would inevitably frustrate the legitimate ends of law enforcement to protect the public from those who choose to violate the law.  Therefore, in the instant matter, the public has a strong interest in the Court's denial of Plaintiff's Motion for a preliminary injunction.

## IV.
## CONCLUSION

In order to prevail on a motion for preliminary injunction, the plaintiff must satisfy each element of the five-part test. While Plaintiff has demonstrated a reasonable likelihood of success on the merits of his excessive force and unreasonable search and seizures claims, he has failed to satisfy the other four preliminary injunction factors.  Thus, Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. #19] must be DENIED.  Likewise, because his second Motion merely duplicates the arguments addressed in his first Motion, Plaintiff's Further Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. #21] must also be DENIED.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. #19] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Further Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. #21] is DENIED.

Entered this __16th__ day of December, 2005.

_____/s/ Joe B. McDade_____ _
JOE BILLY McDADE
United States District Judge