## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

```
JOHN E. COVINGTON,              )
                                )
     Plaintiff,                 )
                                )
v.                              )    No. 05-1204
                                )
UNITED STATES DEPARTMENT OF     )
JUSTICE, et al,                 )
                                )
     Defendants.                )
```

### O R D E R

Before the Court is Plaintiff's Motion for Summary Judgment [Doc. 55] Plaintiff's Motion for a Hearing on the Motion for Summary Judgment [Doc. 56], and Defendant's Motion for Summary Judgment [Doc. 64]. For the following reasons, Plaintiff's Motions [Doc. 55, 56] are DENIED, and Defendant's Motion [Doc. 64] is GRANTED.

### I.
### BACKGROUND

On October 8, 2004, law enforcement officials entered the residence of John Covington Sr. ("Covington Sr") in an effort to find John Covington Jr. ("Covington Jr") whom they suspected was hiding inside. However, a search revealed that he was not where they suspected. Covington Sr is now bringing a *pro se* suit against the United States Department of Justice and all the officials involved alleging that his constitutional rights were

violated by the entry and subsequent search.  The facts leading up to the arrest and the arrest itself are as follows:

Prior to the fall of 2004, the Covington family lived at 313 West Barrington, in Peoria Illinois ("313 W. Barrington"). At the time, the United States Marshal Service Great Lakes Task Force ("Task Force") was conducting surveillance into the whereabouts of Covington Jr.  The 22-year-old Covington Jr had outstanding arrest warrants from three different Illinois Counties for charges of burglary, failure to appear and theft. (Doc. 64 at 27.)  All three arrest warrants were issued during the summer of 2004, and all three stated that Covington Jr's address was 313 W. Barrington - the same address as his parent's home.

One of the officials looking for Covington Jr was Task Force Officer ("TFO") Jim Smith.  In June of 2004, TFO Smith spoke with neighbors and they told Smith that Covington Jr was using the residence at 313 W. Barrington.  Then in August, Smith spoke to Covington Jr's sister about locating him.  Within twenty minutes of talking to the sister, Smith received a phone call from Covington Jr.  The call was placed from a gas station that was two blocks from 313 W. Barrington.  This led Smith to conclude that if the family was not at least assisting Covington Jr in hiding from the Task Force then they were at least aware of his whereabouts.  Then, in September, the Task Force became

2

aware that the Covington family had moved from 313 W. Barrington to 716 East Wilcox Street, Peoria, Illinois ("716 E. Wilcox").[1]

Smith drove by the residence at 313 W. Barrington on September 27, 2007 and found the residence empty. Then, on October 5, Smith learned from the United States Postal Service that the family had forwarded their mail from 313 W. Barrington to 716 E. Wilcox. Specifically, Karen Covington, the mother of the house, had checked the box on the United States Postal Service form so the entire family's mail would be forwarded to the new address.

On October 7, Smith went to 716 E. Wilcox and "sat surveillance." However, Smith did not see anything other than two vehicles which were both registered to Karen Covington. Then, on October 8, Smith returned with other members of the Task Force including TFO D. Quinn, TFO Mark Blaine, and Deputy United States Marshal Glenn Williams. Around 1:00 pm Smith began knocking on the front door and when he did the other officers observed an individual pull back blinds and look out an upstairs window overlooking the driveway. However, the officers were not able to see who was inside. In addition, the officers heard movement inside the house, but no one came to the door. The officers continued knocking on the front and rear doors for

---

[1] A later inquiry with the landlord who owned both residences revealed that Covington Jr. had helped the family move from 313 W. Barrington to 716 E. Wilcox.

over ten minutes with no answer so they then returned to "sitting surveillance." Around 3:00 pm the officers were joined by United States Marshal Kevin Jackson, United States Marshal Bruce Harmening, and Kevin Kirwan of the Peoria Police Department.

At 3:18 pm, a maroon Buick passed Smith and Smith noticed that it was driven by Covington Sr. Smith was previously aware that Covington Sr's driver's license had been expired for approximately five years. Covington Sr pulled into the driveway at 716 E. Wilcox, got his five-year-old daughter from the car and took her into the house.

After Covington Sr entered the house, the law enforcement officials approached the house and knocked on both the front and rear doors. They knocked for approximately five to ten minutes. Covington Sr then came to the door and confronted the officers.

According to the Defendants, Jackson asked Covington Sr if "John Covington" was home. Covington Sr replied that he was John Covington. Jackson then asked for Covington Jr, and Covington Sr replied that his son did not live there. Jackson followed up and asked if Covington Sr himself lived at 716 E. Wilcox. Covington Sr stated that he also did not live there. Jackson also inquired about the mail which was being sent to that address. Covington Sr stated that any mail that came to that address that was addressed to "John Covington" was for him

4

and not his son.  Finally, Jackson asked whether anyone else was home and Covington Sr stated that there was no one else inside.

Upon hearing this, the Defendants believed that Covington Sr was lying.  At the very least, Covington Sr's youngest daughter was inside since the officers had just seen Covington Sr enter with the young girl.  In addition, the officers had also seen and heard movement in the house before Covington Sr arrived.  Accordingly, the Defendants suspected that Covington Sr was also lying about whether Covington Jr was inside and they attempted to enter the premises.  When Covington Sr resisted, they placed him under arrest for resisting their entry.  They then set Covington Sr in a chair and conducted a search of the premises which revealed that Covington Sr's two daughters, ages 5 and 18, were both inside.  However, Covington Jr was nowhere to be found.

Covington Sr's evidence regarding the entry and search is somewhat sparsely laid out in his affidavit attached to his Response to the Motion for Summary Judgment.  According to the affidavit, Covington Sr agrees that the Defendants asked if John Covington Jr was home and he stated that he did not live there. (Doc. 67 at p. 15.)  The affidavit does not describe in any greater detail the conversation which occurred prior to the Defendants entry.  However, according to the affidavit when the Defendants did enter his home in search of the fugitive he

5

"resisted" the officers entry and was placed in handcuffs and set in a chair - at which point they allegedly injured Covington Sr's back. (Id.)  The only additional 'evidence' which Covington Sr provides regarding the conversation leading up to the Defendant's entry is a statement in his affidavit that he "gave no false response to any of the officers before they entered his home on October 8, 2004."  (Doc. 67 at p. 16.)

Covington Sr was asked in his deposition about the conversation prior to the officer's entry into the house and he stated that he did not recall what he said in response to the question.[2]

After Covington Sr was placed under arrest he received three traffic citations – one for not having a valid driver's

---

[2] The deposition transcript reads as follows:

    Q: " What was you actual words when they said is anybody – anyone else there?"
    A: "I believe I said 'I don't think it's any of your business.'"
    Q: "Okay. Did you say there was no one in the house other than yourself?"
    A: "No. No. I don't recall saying that."
    Q: "You don't recall saying that?"
    A: "I don't recall saying that."
    Q: "When somebody says I don't recall, that means it might have happened or it might not have happened. You just don't know?"
    A: "Well, what I'm telling you in all of this stuff is I doubt it happened.  And, if it did, it had nothing to do with was(sic) John Covington, Junior there.  I don't know why it was.  And it was irrelevant as to what was going on if I told 'em nobody was there…." (Covington Sr Depo at 59.)

6

license, one for failing to secure a child in a child safety seat, and one for operating an uninsured vehicle. In addition, Covington Sr was charged with "obstructing police." (Doc. 64 at 6.) However, all of the charges were dismissed except for the ticket for driving without a valid driver's license. (Id.) [3]

Covington Sr has now brought suit alleging violations of his constitutional rights. Specifically, he alleges that the Defendants' action violated his 4th amendment rights.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

---

[3] Eventually, Covington Jr was found and arrested. When he was finally arrested he gave his address as "713 Wilcox" – an address which, if it existed, would be across the street from the Covington home.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); see also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2nd 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary

judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

**ANALYSIS**

Covington Sr alleges a violation of the Fourth Amendment and has brought this claim under 42 U.S.C § 1983.  Section 1983 provides a mechanism for seeking redress for an alleged deprivation of a litigant's federal constitutional and federal statutory rights by persons acting under color of state law. And, the Fourth Amendment provides that the people have "[t]he right… to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. Amend. IV.  The Court will address Plaintiff's *pro se* claim in the following order: (1) Covington Sr's claim that the Defendants engaged in an unlawful search, (2) Covington Sr's claim that the Defendants used unlawful force, and (3) Covington Sr's request for summary judgment and his request for a hearing.

**1. Unlawful Search**

Although searches and seizures inside a home without a search warrant are presumptively unreasonable, in Payton v. New York, 445 U.S. 573, 603 (1980), the Supreme Court has held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is

reason to believe the suspect is within."[4]  Thus, one of the questions that this Court must ask is whether the Defendants had a reasonable belief that Covington Jr was inside the residence at 716 E. Wilcox.

However, the Supreme Court has elaborated on this rule and held that while an arrest warrant does give the police the authority to enter the suspect's home, an arrest warrant does not give police the authority to enter any home of a third person where they believe the suspect is hiding.  Steagald v. United States, 451 U.S. 204, 213-14 (1981).  If that were the case, then police, armed with an arrest warrant, could search the home of any friend or acquaintance of the suspect under the pretext that they were searching for the suspect.  However, between Payton and Steagald there is a still an unanswered question:  What level of certainty is required by an officer, who, armed only with an arrest warrant, enters a residence that he believes is the residence of the individual named in the arrest warrant?  Can the officer have only a reasonable belief that it is the individual's residence, or must the officer be

---

[4] It is appropriate for this Court to rely upon criminal cases to determine the standard for civil suits such as this.  Other courts, when faced with similar suits, have not hesitated to turn to established criminal cases to determine the reasonableness of law enforcement's actions.  See, e.g., Green, 420 F.3d at 695 (citing Wilson v. Arkansas, 514 U.S. 927 (1995); Payton, 445 U.S. 573).

able to show that he had probable cause that the residence was the individual's place of abode?

Various Courts of Appeals have synthesized the holdings of Payton and Steagald to answer this question. The Seventh Circuit has yet to definitely rule on the subject.[5] However, the majority of circuits have required that a police officer possess a "reasonable belief" that a suspect named in an arrest warrant resides at the home to be searched. United States v. Lauter, 57 F.3d 212, 215 (2d Cir.1995); United States v. Lovelock, 170 F.3d 339, 343 (2d Cir.1999); United States v. Edmonds, 52 F.3d 1236, 1248 (3d Cir.1995), vacated in part on other grounds, 52 F.3d 1236, 1251 (3d Cir.1995); United States v. Route, 104 F.3d 59, 62 (5th Cir.1997); United States v. Risse, 83 F.3d 212, 216 (8th Cir.1996); Valdez v. McPheters, 172 F.3d 1220, 1225 (10th Cir.1999); United States v. Bervaldi, 226 F.3d 1256, 1259, 1263-64 (11th Cir.2000); United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir.1995). Several district courts under the Seventh Circuit's purview have also employed the "reasonable belief" rule. Blake v. Peterson, No. 94 C 6561, 1995 WL 360702, at *4 (N.D.Ill. June 14, 1995) ("[T]he clearly established law at the

---

[5] For a similar case which also lays out the lack of guidance in this circuit see Todosijevic v. County of Porter, Indiana, Civ. No. 04-cv-260, 2005 WL 3279387 (N.D.Ind. Dec. 2, 2005). This Court has reached the same conclusion that Judge James T. Moody reached in Todosijevic regarding the split between the Appellate Courts for similar reasons.

11

time of the raid ... was that, absent exigent circumstances, an entry into a dwelling based only on an arrest warrant is lawful only if the government agents have a reasonable belief both that the dwelling is the residence of the person named in the warrant and that the person is at home at the time of the execution of the warrant."); Harasim v. Kuchar, 702 F.Supp. 178, 180-81 (N.D.Ill.1988) ("Summary judgment is only appropriate if the undisputed facts show both that there was a reasonable basis for believing Andy resided at 3749 W. 70th Place and reason to believe he was present at 7:00 a.m. on March 14, 1986.").

The only other circuit to address this issue and adopt a different standard is the Ninth Circuit. That Circuit has employed a higher knowledge standard and held that "the police may enter a home with an arrest warrant only if they have *probable cause* to believe the person named in the warrant resides there." United States v. Harper, 928 F.2d 894, 896 (9th Cir. 1991).

This Court believes that the holding made by the majority of the circuits as well as our sister district courts is the proper standard for the Court to apply in this case. In addition to it being the majority rule, the Seventh Circuit and the Supreme Court have both held that "the touchstone of Fourth Amendment search inquiry is reasonableness." Green v. Butler, 420 F.3d 689, 694 (7th Cir. 2005); Samson v. California, 126

S.Ct. 2193, 165 L.Ed 250 (2006). There is nothing in the Fourth Amendment or Seventh Circuit rulings on the subject which would lead this Court to conclude that a "probable cause" standard is appropriate in this case.

Thus, the proper inquiry in this case is twofold: (1) did the Defendants reasonably believe that 716 E. Wilcox was Covington Jr's residence, and (2) did the Defendants reasonably believe that Covington Jr was present at 716 E. Wilcox? When making this inquiry, the reasonableness of an officer's belief is evaluated under a totality of circumstances. <u>Magluta</u>, 44 F.3d at 1535. In addition, the Court should only look to what the officer knew at the time of the arrest and not to findings made by subsequent investigations. <u>See</u> <u>Beauchamp v. City of Coblesville, Ind.</u>, 320 F.3d 733, 743 (7th Cir. 2003).

The Court finds that the Defendants have satisfied the first prong of the analysis and reasonably believed that Covington Jr resided at 716 E. Wilcox. TFO Smith had in hand three warrants that all listed his address as 313 W. Barrington. Smith had spoken to neighbors in June of 2004 and they told him that Covington Jr was using the residence at 313 W. Barrington. Then in September, Smith learned that the Covington family had moved from 313 W. Barrington to 716 E. Wilcox. Specifically, Smith went by and checked the old residence and found it empty, and Smith viewed the United States Postal Service form which

13

stated that the entire family's mail was forwarded to the new address. Accordingly, the Defendants had a reasonable belief that Covington Jr's residence was 313 W. Barrington, and when the family moved, Covington Jr's residence became 716 E. Wilcox. See Bervaldi, 226 F.3d at 1263-64 (noting that it is not unreasonable to believe that an individual in their twenties would still reside with their parents).

The Defendants also satisfy the second prong of the test and had a reasonable belief that Covington Jr was actually present at 716 E. Wilcox on October 8, 2004. Prior to October 8, the officers had reason to believe that the family could be hiding Covington Jr. In August, Smith spoke to Covington Jr's sister about locating Covington Jr and gave the sister his phone number. Within twenty minutes, Smith received a phone call from Covington Jr from a pay phone two blocks from the house. This gave the officers reason to believe that the Covington family could have been hiding Covington Jr.

Then, on October 8, when the officers went to the door of the new house the second time, they knew that at least three people were in the house. They had previously approached the house and knocked on the door for ten minutes. During that time they saw someone pull back the blinds and heard someone moving around inside the house - but no one came to the door. After that, the Defendants saw Covington Sr and his youngest daughter

14

arrive bringing the total number of people in the house, from the Defendant's perspective, to at least three.

With this in mind, they approached the door and again knocked for five to ten minutes. When Covington Sr finally came to the door they asked him a series of questions. The last question that they asked was if anyone was home. When Covington Sr said that no one was home, they reasonably believed that he was covering for someone. All the parties knew prior to this that law enforcement officials were searching for Covington Jr. Based upon the facts, the law enforcement officials could reasonably conclude that Covington Sr was actively concealing someone inside – and it was reasonable for law enforcement officials to conclude that that someone was Covington Sr's son.

The only evidence that Covington Sr presents which could challenge the sequence of events presented by the Defendants is his one statement in his affidavit that he "gave no false answers to any of the officers before they entered his home…." (Doc. 67 at 16.) No reasonable jury could find based upon this one scintilla of evidence that Covington Sr is entitled to relief in this case. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(holding that a party must have more that a mere scintilla of evidence to support a conclusion). Furthermore, Covington Sr concedes in his deposition that he does not recall the answer he gave when he was asked if there was anyone else in the house.

15

(Covington Sr Depo at 59.)  If he cannot recall what answer he gave, then he has no way of knowing that his statements to the police were truthful.  <u>Russel v. Acme-Evans Co.</u>, 51 F.3d 64 (7th Cir. 1995)("Where depositions and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken…."); <u>Slowiak v. Land O'Lakes, Inc.</u>, 987 F.2d 1293, 1295 (7th Cir. 1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.").  Accordingly, the only material evidence before the Court is the Defendants' records and statements that they asked him if anyone was inside and he responded that no one was inside.  (Doc. 63 Ex 1 at 2, Ex 2 at 3.)  Because of that false statement and the other suspicious activity Defendants could reasonably conclude that Covington Jr was actually at 716 E. Wilcox on October 8, 2004.

Accordingly, this Court holds that no reasonable jury could find that the Defendants have not satisfied both prongs of the test before the Court.

### 2. Unreasonable Force

Covington Sr also alleges that the Defendants used unreasonable force when the set him in the chair.  To establish a claim of excessive force, the plaintiff must show that unreasonable force was used to accomplish an arrest or seizure.  <u>Graham v. Connor</u>, 490 U.S. 386 (1989).  Specifically, a

plaintiff must show that the officer's use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances. Graham, 490 U.S. at 396-97; Bell v. Irwin, 321 F.3d 637, 639 (7th Cir. 2003).  In addition, when courts are deciding whether an officer's conduct was reasonable under the circumstances, they must allow for the fact that police officers are often forced to make split second decisions under intense, uncertain and rapidly evolving situations.  Ford v. Childers, 855 F.2d 1271, 1276 (7th Cir. 1998).  Furthermore, one of the non-inclusive factors that the Supreme Court has considered when evaluating the use of non-deadly force is whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 480 U.S. at 396.

In the case at bar, the facts are undisputed.  First, Covington Sr resisted the officers' entry, then he was placed in handcuffs and finally the Defendants set him in a chair.  (Doc. 67 at 15; Doc. 63 Ex 1 at 2.)  Based upon these facts, the Court holds that no jury could reasonably find that the Defendants used excessive force to arrest Covington Sr.  See 720 Ill. Comp. Stat. 5/7-7 ("A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is

unlawful and the arrest in fact is unlawful."); Smith v. Ball State Univ, 295 F.3d 763 (7th Cir. 2002)(holding that officers were reasonable in forcibly removing an unresponsive student from a car under the belief that he was resisting arrest); Henning v. O'Leary, 06-2378, 2007 WL 487001 (7th Cir. 2007)(holding that police officer's use of deadly force was objectively reasonable when suspect is resisting arrest, a police officer's gun comes loose, and the suspects hand is on or near the gun).  Accordingly, Plaintiff's excessive force claim does not survive summary judgment.

### 3. Plaintiff's Motion for Summary Judgment and Request for Hearing

Covington Sr does not raise any additional material arguments in his Motion for Summary Judgment that were not addressed under Defendant's Motion for Summary Judgment.

In addition, Covington Sr requests a hearing on the matter without stating any reason for a hearing.  Federal Rule of Civil Procedure 78 "expressly provides that a court may determine motions without an oral hearing."  Hill v. Porter Memorial Hosp., 90 F.3d 220, 224 (7th Cir. 1996).  Accordingly, this Court will deny both of Plaintiff's Motions.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. 64] is GRANTED, Plaintiff's Motion for Summary

Judgment [Doc. 55] is DENIED and Plaintiff's Motion for a Hearing [Doc. 56] is DENIED.

ENTERED this  8th  day of March, 2007.

                                              s/Joe Billy McDade
                                                Joe Billy McDade
                                         United States District Judge